IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| CONCERNED FRIENDS OF THE WINEMA; KLAMATH-SISKIYOU WILDLANDS CENTER; WESTERN WATERSHEDS PROJECT; OREGON WILD; and CENTER FOR BIOLOGICAL DIVERSITY,<br><br>       Plaintiffs,<br><br>   v.<br><br>U.S. FOREST SERVICE,<br><br>       Defendant,<br><br>IVERSON MANAGEMENT LIMITED PARTNERSHIP,<br><br>       Defendant-Intervenor. | 1:14-cv-737-CL<br><br>**ORDER** |

**PANNER, District Judge:**

Plaintiffs claim that the Forest Service's decision to authorize cattle grazing on Chemult Pasture in the Fremont-Winema National Forest violates the National Environmental Policy Act (NEPA) and the National Forest Management Act (NFMA). The

1  -  ORDER

grazing permittee, Iverson Management Limited Partnership (Iverson LP), intervenes as a defendant.

Plaintiffs now seek a preliminary injunction prohibiting the Forest Service from allowing Iverson LP's cattle to graze the Chemult Pasture during the current grazing season. I deny the motion.

## BACKGROUND

Chemult Pasture is part of the Antelope Cattle & Horse Allotment (Antelope Allotment), which comprises 68,000 acres including about 3,000 acres of privately owned land. Chemult Pasture offers the best available forage for livestock, providing most of Iverson LP's summer grazing.

Cattle have grazed these rangelands since the 1870s, and there has been grazing under permit on Chemult Pasture since 1908. The Iverson family, which formed Iverson LP, has ranched there for more than 100 years. Keith Little, livestock and ranch manager for Iverson LP, is the grandson of Marjorie Iverson, who is the sole remaining partner in Iverson LP.

Congress requires the Forest Service "to consider the use of National Forest lands for grazing of livestock." Forest Guardians v. U.S. Forest Serv., 329 F.3d 1089, 1097 (9th Cir. 2003) (citing 16 U.S.C. § 1604(e)(1) (NFMA)). "The Forest Service manages livestock grazing on an allotment by issuing a grazing permit; an allotment management plan (AMP); and an annual

operating plan (AOP)[1] or instruction (AOI)." <u>Oregon Natural Desert Ass'n v. Sabo</u>, 854 F. Supp. 2d 889, 902 (D. Or. 2012) (<u>Sabo</u>). Grazing permits normally expire after ten years, while AOIs, as their name implies, are issued annually as agreements between the Forest Service and the permittee. <u>Id.</u> The Forest Service uses AOIs to respond to changing grazing conditions such as drought, water quality, habitat restoration, or risks to threatened plants or animals. See <u>Oregon Natural Desert Ass'n v. U.S. Forest Serv.</u>, 465 F.3d 977, 980-81 (9th Cir. 2006).

Here, plaintiffs challenge the 2014 AOI, which would allow Iverson LP to graze its cattle on Chemult Pasture this summer. Plaintiffs claim grazing will harm the population of Oregon spotted frogs that live on the pasture in and near Jack Creek. Since 2008, the Forest Service has tried to protect frog habitat by building a "Frog Fence" along Jack Creek to exclude cattle.

Plaintiffs also claim that grazing will harm the marshy bogs known as fens, which are home to sensitive species of mosses, sedges, and mollusks. Scientists do not fully understand how fens are created or how they survive. The record is unclear on the number of fens on the Antelope Allotment, with different surveys listing anywhere from 33 to 60 fens. See Litts Decl. at 8 & n.3 (between 50-60 fens); Simpson Decl., Ex. 10, at 9 (33 fens). There are apparently about 400 total acres of fens in the allotment. Litts Decl. at 8 n.3.

---

[1] Before 2004, the Forest Service referred to AOIs as annual operating plans. <u>Oregon Natural Desert Ass'n v. U.S. Forest Serv.</u>, 465 F.3d 977, 979 n.3 (9th Cir. 2006)

3   - ORDER

In 2008, several plaintiffs, including two of the plaintiffs bringing this action, brought an action in this court claiming grazing in Chemult Pasture was harming the Oregon spotted frog. Center for Biological Diversity v. Wagner, No. 1:08-cv-302-CL, 2009 WL 2176049 (D. Or. June 29, 2009) (Wagner) (Report and Recommendation by Magistrate Judge Mark D. Clarke), adopted, 2009 WL 2208023 (D. Or. July 22, 2009). After Wagner was filed, the Forest Service decided to build the Frog Fence. This court dismissed the NFMA claims as moot because of the Forest Service's efforts to protect the frogs' habitat. Id. at *13-14.

In 2010, two plaintiffs, including one of the plaintiffs in this action, filed another action challenging grazing on Chemult Pasture. Sabo, 854 F. Supp. 2d 889. The plaintiffs based their claims on the Forest Service's issuance of a new list of sensitive species found in the Forest. Id. at 905. Before taking an action that could affect a sensitive species, the Forest Service must analyze the action's effects in a biological evaluation. Id.

In Sabo, I agreed with Judge Clarke that the Forest Service had violated NFMA "by failing to review grazing activities occurring annually on the Allotment for the possible effects on sensitive species of animals and plants as mandated in the Forest Plan . . . before authorizing grazing." Id. at 920. Similarly, the Forest Service violated NEPA by failing "to undertake supplemental environmental analysis in light of the sensitive species found on the Allotment before authorizing grazing on the

4 - ORDER

Allotment." Id. at 923-24.

Although the Forest Service had violated NEPA and NFMA, I agreed with Judge Clarke that the plaintiffs were not entitled to injunctive relief. As Judge Clarke noted, the plaintiffs' proposed remedy was "not practical, would take a long time to accomplish, and would be very expensive," in addition to harming Iverson LP's business. An injunction might have resulted in a net loss of Oregon spotted frog habitat because Iverson LP would have been forced to graze more intensively on its own private land, which contains excellent frog habitat. Id. at 900.

The Forest Service issued AOIs to Iverson LP for 2012 and 2013, allowing grazing on Chemult Pasture. The Forest Service found no violations of the 2012 AOI. But in 2013, the Forest Service found Iverson LP had repeatedly allowed cattle to trespass into prohibited areas. In November 2013, the Forest Service sent Iverson LP a Notice of Non-Compliance (NONC) of Term Grazing Permit. Dhaemers Decl., Ex. E. The NONC notified Iverson LP that from July to October 2013,

> your livestock were observed either grazing outside of your allotment, on the adjoining Jack Creek Sheep allotment . . . or within areas of your Antelope allotment (Jack Creek Riparian area) that are not currently authorized for livestock grazing. Each time livestock were observed grazing in an unauthorized area your representative, Keith Little, was notified (approximately 15 times) and instructed to remove them from the area. However, this issue persisted throughout the grazing season.

Id., Ex. E at 1.

In the 2014 AOI, the Forest Service requires Iverson LP "to maintain the Jack Creek Riparian fence in a manner that keeps

5  - ORDER

cattle from accessing the riparian pasture and to monitor the area regularly to minimize/eliminate livestock impacts in this area." Howard Decl., Ex. 3, at 4. Because Iverson LP violated the 2013 AOI multiple times, a single violation of the 2014 AOI could result in sanctions. Lawrence Decl. ¶ 15.

The 2014 grazing season for the Antelope Allotment, excluding Chemult Pasture, began May 15, 2014. The Forest Service plans to allow grazing on Chemult Pasture from July 1 through September 30, 2014. The Forest Service will halt grazing before the scheduled end of the season "if rangeland monitoring shows that forage utilization limits are hit early." Gov't Resp. at 41.

The Forest Service is in the process of issuing a supplemental NEPA analysis to address the most recent list of sensitive species. In early June 2014, the Forest Service issued a draft revised Environmental Assessment for the Antelope Grazing Allotment. The draft Environmental Assessment and related documents should be available for objections. Lawrence Decl. ¶ 2.

## LEGAL STANDARDS

### I. Preliminary Injunctions

The party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res.

6 - ORDER

Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." Id. at 24.

## II. Judicial Review under the Administrative Procedure Act

Under the Administrative Procedure Act (APA), this court may set aside a federal agency's decision if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A). An agency's decision is arbitrary and capricious if the agency

> relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Lands Council v. McNair, 537 F.3d 981, 987 (9th Cir. 2008) (en banc) (internal quotation marks omitted), overruled in part on other grounds by Winter, 555 U.S. 7.

## DISCUSSION

### I. Plaintiffs Have Not Shown a Likelihood of Success

#### A. NEPA Claim

##### 1. Standards for NEPA Claims

"Congress enacted NEPA 'to protect the environment by requiring that federal agencies carefully weigh environmental considerations and consider potential alternatives . . . before the government launches any major federal action.'" Center for Biological Diversity v. Salazar, 695 F.3d 893, 914-15 (9th Cir. 2012) (quoting Barnes v. U.S. Dep't of Transp., 655 F.3d 1124, 1131 (9th Cir. 2011) (internal quotation marks omitted)). "The

7 - ORDER

purpose of NEPA is to ensure that federal agencies consider the environmental impact of their actions." Municipality of Anchorage v. United States, 980 F.2d 1320, 1329 (9th Cir. 1992). Once the court is satisfied that an agency's exercise of discretion is truly informed, the court must defer to the agency's "'informed discretion.'" Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 377 (1989) (quoting Kleppe v. Sierra Club, 427 U.S. 390, 412 (1976)).

### 2. Plaintiffs' NEPA Claim

Plaintiffs contend that the Forest Service violated NEPA by allowing grazing on Chemult Pasture in 2012, 2013, and 2014 even though the Forest Service has not completed the NEPA analysis of the effects of grazing on sensitive species. NEPA prohibits an agency from committing resources irreversibly before the agency has completed a required environmental analysis. Sabo, 854 F. Supp. 2d at 923.

Plaintiffs have not shown a likelihood of success on their NEPA claim. In deciding to authorize grazing on Chemult Pasture for 2014, the District Ranger relied in part on studies prepared by agency specialists in 2013 and 2014, which found that grazing will either have no effect on sensitive species, or will affect individuals, but will not contribute to a federal listing or harm species' viability. See Lawrence Decl., Ex. B. The District Ranger noted that the 2014 AOI imposes conditions to protect sensitive species and their habitats, including upgrading and extending existing fences.

8 - ORDER

Plaintiffs contend that the specialist reports cited by the Forest Service are not useful in evaluating grazing because conditions have changed, mainly because of drought. Keith Little, Iverson LP's manager, states that based on his "observations of water and forage conditions," this year will not be "a more severe drought than in 2013." Little Decl. ¶ 65. In any event, the Forest Service is entitled to rely on its experts. I conclude that plaintiffs are not likely to show that the Forest Service violated NEPA by authorizing grazing.

Defendants also argue that this court lacks jurisdiction over the NEPA claim. I conclude that defendants are unlikely to show this court lacks jurisdiction over the NEPA claim. See, e.g., Sabo, 854 F. Supp. at 922-23 (jurisdiction over NEPA challenges to AOIs).

**B. NFMA Claims**

**1. Legal Standards for NFMA Claims**

"While NFMA requires that the proposed site-specific actions be consistent with the governing Forest Plan, the Forest Service's interpretation and implementation of its own forest plan is entitled to substantial deference." Native Ecosystems Council v. Weldon, 697 F.3d 1043, 1056 (9th Cir. 2012). The Forest Service violates NFMA if it does not comply with a Forest Plan. Id.

**2. Plaintiffs' NFMA Claim**

The parties have submitted dueling expert reports on whether grazing on Chemult Pasture will harm fens or Oregon spotted frog

9 - ORDER

habitat. The parties attack the opposing expert reports as fatally flawed.

A court's deference when reviewing an agency's decision "is highest when reviewing an agency's technical analyses and judgments involving the evaluation of complex scientific data within the agency's technical expertise." League Of Wilderness Defenders Blue Mountains Biodiversity Project v. Allen, 615 F.3d 1122, 1130 (9th Cir. 2010). A court should not instruct an agency on scientific issues, or choose scientific studies, or order "the agency to explain every possible scientific uncertainty." Lands Council, 537 F.3d at 988. "When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." Id. at 1000 (internal citations and quotation marks omitted).

Plaintiffs attempt to evade the holding of Lands Council, arguing that the Forest Service's expert evaluations and reports are not worthy of deference because the experts used unreliable methods or relied on outdated or inaccurate data. But the record indicates that the Forest Service properly exercised its discretion in relying on its own experts. This court's role is not to choose winners in a battle of experts, regardless of whether the court agrees with the agency's ultimate decision.

## II. Likelihood of Irreparable Harm

Plaintiffs argue irreparable harm will occur if grazing on

the Chemult Pasture proceeds this season. I agree with defendants that plaintiffs' claims of irreparable harm are speculative.

### A. Fens

Plaintiffs' experts admit that the effects of drought or grazing on fens are unknown. If the hydrologists and geologists who study fens do not understand how fens function, then plaintiffs cannot show whether grazing this summer will likely harm fens on Chemult Pasture.

For example, plaintiffs argue that this year's low snowpack supports a prohibition on grazing. But in Sabo, the plaintiffs argued that "a late snowpack makes fens more susceptible to damage." Sabo, 854 F. Supp. 2d at 898. Perhaps fens are more resilient than plaintiffs believe. Fens have survived for many years despite drought and high snow packs, and despite incursions by elk and cattle.

In addition, as the intervenor notes, "[m]any fens in the Chemult Pasture are excluded from grazing, including those in the Jack Creek Riparian pasture." Intervenor Reply at 5. Plaintiffs have not shown a likelihood of irreparable harm to fens caused by one season of grazing on Chemult Pasture.

### B. Oregon Spotted Frog

Plaintiffs also have not shown that allowing grazing this summer would irreparably harm the Oregon spotted frog population. Certainly I am concerned about Iverson LP's multiple violations of the 2013 AOI, which included trespasses into Jack Creek. And

11 - ORDER

the Fish and Wildlife Service has now proposed listing the Oregon spotted frog under the Endangered Species Act. See 78 Fed. Reg. 53582 (Aug. 29, 2013). In the current AOI, however, the Forest Service has included measures designed to prevent further violations by Iverson LP. If Iverson LP continues to allow cattle to trespass, it will face sanctions, which could include suspension of the grazing permit.

There are many possible reasons for the decline of the Oregon spotted frog, of which grazing is only one possible culprit. See Sabo, 854 F. Supp. 2d at 904. But moderate grazing might improve frog habitat by thinning dense vegetation on stream banks. Id. at 905. In addition, as this court noted in Sabo, prohibiting grazing on public land could cause Iverson LP to graze near the frog habitat on Iverson LP's private land.

### III. Balance of Equities

In balancing the harms, this court must weigh the potential environmental injuries asserted by plaintiffs against the risks from enjoining grazing. Lands Council, 537 F.3d at 1004. Plaintiff contends that the potential harm to the Oregon spotted frog and to fens shows that the equities favor an injunction.

Defendants respond that an injunction would harm Iverson LP because its cattle are already grazing on the Antelope Allotment, and Iverson LP depends on the forage from the Chemult Pasture. If Iverson LP cannot use that forage, it would likely have to sell its cattle because alternative sources of forage would be too expensive. This could harm the economy of the nearby town,

12 - ORDER

Silver Lake.

I conclude that the balance of equities favors defendants. Plaintiffs rely on speculation in asserting the harm that could occur. In contrast, prohibiting grazing this season would undoubtedly harm Iverson LP.

**IV.  A Preliminary Injunction Would Not Be in the Public Interest**

"The plaintiffs bear the initial burden of showing that the injunction is in the public interest." Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009). Potential environmental harm does not necessarily justify an injunction, "particularly where . . . the plaintiffs are not likely to succeed on the merits of their claims." Lands Council, 537 F.3d at 1005.

Plaintiffs contend that the public interest lies in protecting fens and frogs. But plaintiffs have not shown that grazing this summer will harm fens or frogs, given the safeguards put in place by the Forest Service. Defendants argue that allowing grazing would be in the public interest because of Iverson LP's importance to the local economy. I conclude that plaintiffs have not shown the public interest favors a preliminary injunction prohibiting grazing on Chemult Pasture.

/ / /

/ / /

/ / /

## CONCLUSION

Plaintiffs' motion for a preliminary injunction (#10) is denied.

IT IS SO ORDERED.

DATED this __11__ day of June, 2014.

*/s/ Owen M. Panner*

OWEN M. PANNER
U.S. DISTRICT JUDGE