**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
District of Oregon
**SEAN E. MARTIN, OSB #054338**
Assistant United States Attorney
U.S. Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1010
sean.martin@usdoj.gov
      Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **CONCERNED FRIENDS OF THE WINEMA, KLAMATH SISKIYOU WILDLANDS CENTER, WESTERN WATERSHEDS PROJECT, OREGON WILD** and **CENTER FOR BIOLOGICAL DIVERSITY,** | Case No. 1:14-cv-00737-CL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISSOLVE INJUNCTION** |
| Plaintiffs, | |
| v. | |
| **UNITED STATES FOREST SERVICE**, a federal agency, and **U.S. FISH & WILDLIFE SERVICE**, a federal agency, | |
| Defendants. | |
| **IVERSON MANAGEMENT LIMITED PARTNERSHIP**, | |
| Defendant-Intervenor. | |

## INTRODUCTION

As Defendants explain below, this Court should dissolve its limited NFMA injunction against the Forest Service.

As Plaintiffs acknowledge, this Court's review "should be limited to the reasons underlying the previous injunction." Plaintiffs' response 3. Here, the heart of the injunction is a requirement that the Forest Service assess the actual effects of "current" or *status quo* grazing in issuing Annual Operating Instructions ("AOIs") under the 1995 Allotment Management Plan ("AMP"). Meeting the injunction, the Forest Service has now studied the instances and intensity of prior unauthorized grazing in assessing the baseline effects of current grazing and reached rational species viability findings for such grazing.

Notably, Plaintiffs do not challenge the Forest Service's new assessment of the effects of *status quo* grazing or its effects on species viability. Instead, Plaintiffs attempt to use the limited AOIs injunction as a short-cut to litigate their disagreements with the Forest Service's new allotment management decision that will apply to *future* Chemult Pasture grazing. Maintaining the injunction on these grounds exceeds the scope of the injunction and amounts to an end-run around appropriate judicial review of the new grazing decision.

Page 1 – Defendants' Reply in Support of Motion to Dissolve Injunction; *Concerned Friends of the Winema v. United States Forest Service*; Case No. 1:14-cv-00737-CL

Defendants are prejudiced by applying the injunction prospectively. That would go well beyond the existing issues and claims in *this* action and effectively invalidate a new, comprehensive grazing framework that is presumptively valid under the law.  It would also incorrectly absolve Plaintiffs of their burden to establish that the new Forest Service grazing system decision is arbitrary and capricious.

Plaintiffs argue that the Magistrate Judge may not decide this motion regarding the injunction.  Plaintiffs' response at 6.  That is at odds with Plaintiffs' earlier request that the district court "assign Judge Clarke the role of supervising compliance with" an injunction.  ECF 112 at 37.  Nor is there any need for further briefing, as Defendants are not supplying new factual evidence or arguments with this reply.  This Court should promptly rule on Defendants' motion.

## THE SCOPE OF THIS COURT'S NFMA INJUNCTION

This Court's injunction required a more accurate measure of the effects of "current" or *status quo* grazing prior to further grazing AOIs under the 1995 AMP, but this Court did not endorse closing Chemult Pasture to grazing altogether.  ECF 105 at 14, 18-19, 30-31.

This Court found that the Forest Service violated NFMA, because the 2012-15 AOIs violated the "viability directive" from the Winema Forest Plan.

Page 2 – Defendants' Reply in Support of Motion to Dissolve Injunction; *Concerned Friends of the Winema v. United States Forest Service*; Case No. 1:14-cv-00737-CL

*Id*. at 14, 18-19.   This Court fashioned a limited injunction, but did "not recommend issuing an injunction closing the Chemult Pasture to grazing altogether." *Id*. at 30.

In fashioning its limited NFMA injunction, this Court's concern was the Forest Service's failure to account for the effects of actual *status quo* grazing, including trespass and other unauthorized grazing.  This Court agreed with Plaintiffs that the Forest Service's finding lacked "rational support" that *status quo* grazing only had minor effects on Oregon spotted frogs and sensitive species.  *Id*. at 15, 18.  According to this Court, "the 'current grazing' measurement must accurately reflect *actual* current grazing to properly indicate the adverse effects of such grazing on the sensitive species populations."  *Id*. at 18.  The Forest Service's "failure to modify its measurements of 'current grazing' . . . to account for cattle trespass and additional unauthorized grazing lacks any rational basis or justified reasoning in the record."  *Id*. at 15-16, 18-19.

This Court recognized that the Forest Service could typically conduct its "review of the possible effects of cattle grazing by any reasonable means or methods" it chooses.  *Id*. at 18.  Nevertheless, it found that the agency was not entitled to "the same deference" in how it measured current grazing, given its failure to account for important factors.  *Id*.

Page 3 – Defendants' Reply in Support of Motion to Dissolve Injunction;
*Concerned Friends of the Winema v. United States Forest Service*; Case No. 1:14-cv-00737-CL

Accordingly, this Court's injunction barred the Forest Service from "issuing *future AOIs* allowing grazing in the Chemult Pasture unless it can demonstrate that it has accurately measured grazing in the relevant areas and accordingly determined that such levels of grazing do not contribute to a negative trend in viability," per the "directives" in the Winema Forest Plan. *Id*. at 19 (emphasis added). *See also id*. at 30-31.

This Court's limitation of its injunction to future AOIs is important here. As this Court has found, AOIs are issued without specific environmental reviews and under the direction of an existing AMP. The Forest Service "prepares AOIs specify[ing] those annual actions that are needed to implement the management direction set forth in the project-level NEPA-based decisions." *Id*. at 11 (internal quotation omitted). Actions in the AOIs "are not required to undergo any additional site-specific environmental analysis." *Id*. (internal quotation omitted).

When this Court reached its injunction, the Forest Service was allowing *status quo* grazing under the 1995 AMP, without further public NEPA review and without an updated AMP. Further, the Forest Service was not accounting for unauthorized cattle use in measuring the effects of current grazing. All of this is no longer the case.

Page 4 – Defendants' Reply in Support of Motion to Dissolve Injunction;
*Concerned Friends of the Winema v. United States Forest Service*; Case No.
1:14-cv-00737-CL

# ARGUMENT

I. **The NFMA injunction should be dissolved, because the Forest Service's assessment of status quo grazing has accounted for unauthorized grazing and species viability.**

The Forest Service has shown that it has taken unauthorized use into account in assessing the effects of *status quo* grazing, and has demonstrated that such grazing does not impair species viability. This showing of a significant factual change warrants dissolution of the limited NFMA injunction. *See Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000); *Hapner v. Tidwell*, 464 Fed. App'x 679, 680-81 (9th Cir. January 3, 2012) (memorandum disposition) (dissolving a limited NFMA injunction and finding that the Forest Service's "revising [the] methodology" of its analysis was sufficient).

### A. The Forest Service has corrected the error that prompted the injunction.

After this Court's AOIs injunction was fashioned, the Forest Service completed a lengthy public process and authorized a new allotment management system for future grazing on rangelands including Chemult Pasture. In reaching that decision, the Forest Service measured the effects of current grazing -- and accounted for unauthorized cattle use in making this assessment of the *status quo*. It also rationally found that such grazing does not contribute to a negative trend in viability.

Page 5 – Defendants' Reply in Support of Motion to Dissolve Injunction; *Concerned Friends of the Winema v. United States Forest Service*; Case No. 1:14-cv-00737-CL

The Forest Service's November 2017 Final Environmental Impact Statement ("FEIS") took account of the effects of actual *status quo* grazing. ECF 136-2 at 43.  Specifically, the FEIS cited a study of the extent of unauthorized grazing over the prior 10 years, and found that this unauthorized use resulted in 5-10% forage utilization in areas that were closed to grazing.  *Id*.  The FEIS then took this data into account in assessing the effects of continuing *status quo* grazing on the federally-listed Oregon spotted frog.  *Id*. at 175.  The FEIS also found that the proposed future grazing system would not negatively impact the species' viability.  *Id*. at 177.[1]  The FEIS also assessed the effects of *status quo* grazing on fen habitats and specific sensitive species.  *Id*. at 125-29 (discussing effects of continuing current grazing ("Alternative 2") on fen habitats and sensitive plants).  It then reached species-by-species viability findings that continuing current grazing was not likely to impair sensitive plant viability or sensitive mollusk viability.  *Id*. at 151-55, 163-64.  The FEIS was informed by the Forest Service botanist's Biological Evaluation which provided further context and

---

[1]   The Forest Service's May 2018 final Record of Decision ("ROD") also made viability findings in choosing to authorize a new system for future grazing.  ECF 136-3 at pp. 4-5.  *See also id*. at 10-11, 15 (discussion in ROD of grazing in frog habitat), id. at 12, 14 (discussion of viability of sensitive species).

Page 6 – Defendants' Reply in Support of Motion to Dissolve Injunction; *Concerned Friends of the Winema v. United States Forest Service*; Case No. 1:14-cv-00737-CL

detail regarding the effects of *status quo* grazing on various sensitive species. *See* ECF 136-1 at 90-98, 115-22 (tables).

The Forest Service made a rational assessment of the effects of current grazing on species viability. When the Forest Service assesses the effects of activities on species viability, the agency need only "supply a rational connection between the facts found and the conclusions made." *In re Big Thorne Project*, 857 F.3d 968, 975 (9th Cir. 2017) (internal quotation omitted). The Ninth Circuit has "repeatedly and emphatically stressed" that the agency is "not required to identify a specific 'mechanism' for securing viability." *Id*.

The injunction should be dissolved because the Forest Service's findings on the effects of current grazing are rational and not arbitrary and capricious. *See Alliance for the Wild Rockies v. Bradford*, 864 F. Supp. 2d 1011, 1018 (D. Mont. 2012) (dissolving injunction against the Forest Service under the "arbitrary and capricious" standard). An agency is arbitrary and capricious "only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the

Page 7 – Defendants' Reply in Support of Motion to Dissolve Injunction; *Concerned Friends of the Winema v. United States Forest Service*; Case No. 1:14-cv-00737-CL

product of agency expertise." *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc) (internal quotation omitted).

Plaintiffs' response does not challenge the Forest Service's assessment of *status quo* grazing – the whole point of the injunction. Plaintiffs do not even mention, much less challenge, the Forest Service's study of unauthorized grazing or its assessment that continuing the *status quo* would not impair species viability. Plaintiffs' response, ECF 138.

The Forest Service has now assessed *status quo* grazing based on its experts' study of its effects including the impacts of unauthorized grazing. As this Court recognized in fashioning the earlier injunction, the Forest Service may conduct its "review of the possible effects of cattle grazing by any reasonable means or methods" it chooses. ECF 105 at 18. With regard to its earlier failure to measure unauthorized use in accounting for the effects of the *status quo*, the Forest Service has demonstrated that it corrected that error with a rational analysis.

### B. The administrative backdrop has significantly changed.

The injunction should also be dissolved because of other significantly changed circumstances.

The injunction was issued when the Forest Service was issuing AOIs under the prior (1995) AMP and in the absence of further public NEPA

Page 8 – Defendants' Reply in Support of Motion to Dissolve Injunction; *Concerned Friends of the Winema v. United States Forest Service*; Case No. 1:14-cv-00737-CL

review or site-specific environmental review.  *See* ECF 105 at 11.  This Court found that rather than complete supplemental NEPA analysis in light of the post-AMP discovery of various species, the Forest Service "only completed the required AOIs."  *Id*.  The injunction then applied to future AOIs that authorized annual grazing under the 1995 AMP's environmental analysis.  *Id*. at 30-31.  In fashioning the injunction, this Court expressed its concern over the Forest Service's incomplete NEPA process.  *Id*. at 12.

Now, the circumstances have changed significantly.  The Forest Service is no longer authorizing Chemult Pasture grazing under AOIs subject to the injunction but under a brand-new Record of Decision ("ROD"), AMP, and permits, after completion of an extensive NEPA public process.

**C. Plaintiffs are challenging a new and substantially revised grazing system that does not track their claims in this action.**

Plaintiffs' response essentially challenges the new system that will apply to future grazing.  *See infra* Argument II.  This new approach is nowhere challenged in this action.  To the contrary, this lawsuit challenged the Forest Service's failure to complete a new system while still authorizing *status quo* grazing.  The new grazing system expands the grazing base by more than 21,000 acres, which is expected to improve livestock distribution and reduce areas of concentrated use.  ECF 136-3 at 7, 9, 13, 14.  It also, for the first time, employs a "deferred" grazing system that specifies periodic rest

Page 9 – Defendants' Reply in Support of Motion to Dissolve Injunction;
*Concerned Friends of the Winema v. United States Forest Service*; Case No. 1:14-cv-00737-CL

periods for pastures or other areas within the allotment. And, it places the private inholdings in the Jack Creek area under formal Forest Service management. *Id*. at 5, 10. This "cooperative management" step tracks the longstanding management recommendations for the local Oregon spotted frog population, and allows the terms and conditions of the new Biological Opinion to be applied across all portions of the frog's habitat in the Jack Creek system. *Id*. at 10. It is expected to provide for "a greater likelihood of population recovery." *Id*.

The substantial changes that comprise the new system may be challenged, under a new action and upon review of a new administrative record. The new system is the culmination of a comprehensive, new administrative process and is well beyond the parameters of this action. It is inappropriate to maintain the injunction.

**D. It is inequitable to maintain the injunction.**

Given all these factual developments, it would be inequitable to maintain the injunction. This Court already reached a final judgment in this action and applying the injunction prospectively is no longer equitable. Fed. R. Civ. P. 60(b)(5).

Plaintiffs clearly oppose the new grazing system. Plaintiffs' response 7. That being the case, they have an available and appropriate remedy – they may file a new action.

Defendants are prejudiced by applying the injunction prospectively. That would effectively invalidate a new, comprehensive grazing framework that is the result of its own detailed, lengthy, and public administrative process. Continuing the injunction would incorrectly flip the presumptive validity of the FEIS and ROD – and incorrectly absolve Plaintiffs of their burden to establish that this new "final agency action" was arbitrary and capricious.

This Court recognized this important concern in the Mt. Ashland Ski Area litigation when it dissolved an injunction and required that a new action be filed against a new agency action. *See Wild v. Connaughton*, No. 1:05-cv-3004-PA, 2012 WL 12888666 *6 (D. Or. August 17, 2012) (requiring that a new action be filed, which "serves to preserve the burden of proofs of the respective parties and ensures the proper deference is accorded to agency actions and decisions"), *aff'd*, 575 Fed. App'x 736 (9th Cir. May 23, 2014) (memorandum disposition). Similarly here, equity counsels that this Court dissolve the injunction.

Page 11 – Defendants' Reply in Support of Motion to Dissolve Injunction; *Concerned Friends of the Winema v. United States Forest Service*; Case No. 1:14-cv-00737-CL

## II. Plaintiffs' arguments fail on numerous grounds.

### A. Plaintiffs attempt to use the limited injunction as a vehicle to misapply judicial review of a new grazing system decision.

The injunction targeted shortcomings in how the Forest Service assessed the effects of *status quo* grazing in issuing AOIs under the older environmental reviews conducted for the 1995 AMP. The injunction addressed a situation where the Forest Service was allowing *status quo* grazing without accounting for actual use including unauthorized use.

Plaintiffs, however, seek to maintain this limited NFMA injunction well beyond its scope and intent. They do not challenge or identify any shortcomings with the Forest Service's assessment of current grazing. Plaintiffs thereby implicitly concede that the Forest Service's assessment of the effects of current grazing was rational and met the point of the injunction. *See Wild*, 2012 WL 12888666 at *5 (dissolving injunction after finding that the agency "corrected the violations noted" and that "in order to demonstrate the injunction should be dissolved, nothing more is required").

Plaintiffs exclusively focus on substantive details of the newly-authorized, future grazing system for Chemult Pasture, including expected annual variations in grazing levels, timing, and locations, and the specifics of new monitoring protocols. *See* Plaintiffs' response 9-21. But that has no

Page 12 – Defendants' Reply in Support of Motion to Dissolve Injunction; *Concerned Friends of the Winema v. United States Forest Service*; Case No. 1:14-cv-00737-CL

bearing on the Forest Service's unchallenged assessment of the effects of *status quo* grazing.

Illustratively, Plaintiffs argue that the Forest Service "has not demonstrated that its [new] mitigation measures to alleviate damage to fens and Oregon spotted frogs will be effective." Plaintiffs' response 1. But this does not relate to the injunction, because the injunction addressed a failure to address the level and effects of *status quo* grazing, not the effectiveness of new mitigation measures under a new system. Here, this Court's review "is limited to the scope of the prior injunction and the injunction order at issue." *Conservation Congress v. U.S. Forest Service*, No. 2:13-cv-1977-JAM-DB, 2018 WL 1142199 at *2 (citing *Monsanto v. Geertson Seed Farms*, 561 U.S. 139, 162 (2010)). The injunction here plainly did not cover the effectiveness of future mitigation measures.

It is inappropriate for Plaintiffs to use the limited injunction as a vehicle to litigate their disagreements with the new grazing system. "New claims must be presented through a new action and cannot serve as basis to deny a request to dissolve the injunction." *Conservation Congress*, 2018 WL 1142199 at *2. The instant action challenged prior (2012-15) year-by-year AOIs under a 1995 AMP, not a brand-new grazing system that is the culmination of a NEPA process to establish a new AMP. "[A] plaintiff cannot

Page 13 – Defendants' Reply in Support of Motion to Dissolve Injunction; *Concerned Friends of the Winema v. United States Forest Service*; Case No. 1:14-cv-00737-CL

raise claims it failed to put the defendant on notice of by its complaint." *Id.* (citing *Pickern v. Pier 1 Imports, Inc.*, 457 F.3d 963, 968 (9th Cir. 2006)).

This Court's injunction addressed the Forest Service's prior shortcomings in how it measured the baseline effects of *status quo* grazing in issuing year-by-year AOIs.  But Plaintiffs wrongly seek to expand it prospectively to enjoin a new system for future Chemult Pasture grazing.  *See* Plaintiffs' response 7 (arguing that the "first relevant question" is whether the new system "accurately reflects the level of grazing that *will* occur") (emphasis added).

Plaintiffs argue that the <u>new</u> grazing system will impair the viability of Oregon spotted frogs.  *See* Plaintiffs' response 17-21.  But that has nothing to do with the injunction, which targeted the shortcomings in the Forest Service's assessment of *status quo* grazing under AOIs.  Further, Plaintiffs all but ignore the detailed rationale provided by the Forest Service for its frog viability findings under the new grazing system.  ECF 136-3 at 4-5, ECF 136-2 at 177.  And Plaintiffs fail to account for any deference in an agency's viability findings.  *See infra* Argument II.B; *Great Broads for Wilderness v. Kimbell*, 709 F.3d 836, 846 (9th Cir. 2013) (a reviewing court "generally must be 'at its most deferential' when reviewing scientific judgments and technical analyses within the agency's expertise").

Page 14 – Defendants' Reply in Support of Motion to Dissolve Injunction; *Concerned Friends of the Winema v. United States Forest Service*; Case No. 1:14-cv-00737-CL

### B. Plaintiffs' representation of NFMA species-viability standards is inaccurate.

Plaintiffs argue that the Forest Service's plant viability findings (for the <u>new</u> grazing system) "contain the same flaws" that Plaintiffs noted earlier. Plaintiffs' response 16, 17 (citing ECF 105 at 16). But the Forest Service did not undertake the "proxy-on-proxy" approach that Plaintiffs identified. The proxy-on-proxy approach "uses habitat as a proxy to measure a species' population and then uses that species' population as a proxy for the population of other species." *Native Ecosystems Council v. Tidwell*, 599 F.3d 926, 933 (9th Cir. 2010) (internal quotation and alterations omitted). Here, the Forest Service reached its viability findings after directly measuring species habitat, distribution and abundance, and known sites/acreage for each of the sensitive species. The Forest Service did not use one species' habitat as a proxy for another species. ECF 136-1 at 90-98 (botany report); ECF 136-2 at 108-12, 151-55 (FEIS). Plaintiffs' attempt to impose proxy-on-proxy standards is inappropriate and conflicts with Ninth Circuit precedent about the standards for Forest Service viability analysis. Plaintiffs' reply 17; *In re Big Thorne Project*, 857 F.3d 968, 975 (9th Cir. 2017) (emphasizing that in assessing viability, the Forest Service need only "supply a rational connection between the facts found and the conclusions made"); *Alliance for*

Page 15 – Defendants' Reply in Support of Motion to Dissolve Injunction;
*Concerned Friends of the Winema v. United States Forest Service*; Case No. 1:14-cv-00737-CL

*the Wild Rockies v. Pena*, 865 F.3d 1211, 1220 (9th Cir. 2017) (describing proxy-on-proxy approach).

### C. **Plaintiffs wrongly attempt to sweep in their already-rejected NFMA "riparian directive" claim.**

Plaintiffs also attempt to maintain the injunction by arguing about bare ground in fens and a 10% disturbance threshold, but this information is well beyond the scope of the injunction. *See* Plaintiffs' response 13-14, 15-16. That is because this Court already rejected Plaintiffs' NFMA argument about the Winema Forest Plan "riparian directive" and disturbance levels in fens. ECF 105 at 17, 18 (noting the Forest Service is entitled to "latitude to determine whether the conditions of sensitive fens are keeping with" Forest Plan goals). Plaintiffs' attempt to resurrect their failed NFMA claim on fens is no grounds to continue the injunction.

### D. **Plaintiffs' attempt to rely on the Third Declaration of Teresa Simpson is inappropriate.**

Plaintiffs' attempt to use the extra-record Third Declaration of Theresa Simpson (ECF 139) is also inappropriate. Her commentary does not address the narrow parameters of the AOIs injunction regarding the proper accounting of *status quo* grazing. Further, Ms. Simpson's observations of fences and other improvements occurred more than three weeks *before* the expected July 2018 livestock turnout, well before the planned maintenance

and range readiness efforts that allow for appropriate turnout.  Further, her declaration is after the fact of the new ROD, AMP, and permits and therefore has no bearing on whether the new grazing system decision is arbitrary and capricious.  Plaintiffs acknowledge that judicial review is "based on review of the administrative record for the new agency actions," telegraphing that the Simpson declaration should have no bearing here.  Plaintiffs' response 9 n.3.  As this Court recognized earlier in this case, the Ninth Circuit "applies a post-decisional bar against extra-record evidence."  ECF 105 at 29 (citing *Tri-Valley CARES v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012)).  Law of the case bars the post-decisional Simpson declaration.

### E. Plaintiffs inappropriately attempt to expand the NFMA injunction to the U.S. Fish & Wildlife Service's Biological Opinion.

Plaintiffs argue that reviewing the limited NFMA injunction also requires judicial review under the Endangered Species Act ("ESA") of the new Biological Opinion from the U.S. Fish & Wildlife Service "FWS").  Plaintiffs' response 22-23.  But the prior Biological Opinion was vacated and remanded under the ESA, not NFMA.  There is no ESA injunction in place here, and NFMA applies to the Forest Service, not the FWS.  Plaintiffs cite *Swan View Coalition v. Barbouletos*, 2010 WL 11530904 (D. Mont. Jan. 27, 2010), but that case involved an ESA injunction.  If Plaintiffs believe the new Biological

Page 17 – Defendants' Reply in Support of Motion to Dissolve Injunction; *Concerned Friends of the Winema v. United States Forest Service*; Case No. 1:14-cv-00737-CL

Opinion has legal deficiencies under the ESA, they may bring a new action against the presumptively valid new Biological Opinion. "New claims must be presented through a new action and cannot serve as basis to deny a request to dissolve the injunction." *Conservation Congress*, 2018 WL 1142199 at *2.

## CONCLUSION

For these reasons, this Court should dissolve the NFMA injunction against the Forest Service.

DATED this 28th day of June, 2018.

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney
District of Oregon

*/s/ Sean E. Martin*
SEAN E. MARTIN
Assistant United States Attorney