Lauren M. Rule (OSB #015174)
Elizabeth H. Potter (OSB #105482)
ADVOCATES FOR THE WEST
3115 NE Sandy Blvd., Ste. 223
Portland, OR 97232
(503) 914-6388
lrule@advocateswest.org
epotter@advocateswest.org

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### MEDFORD DIVISION

| | |
|---|---|
| **CONCERNED FRIENDS OF THE WINEMA,** **KLAMATH-SISKIYOU WILDLANDS CENTER,** **WESTERN WATERSHEDS PROJECT,** **OREGON WILD,** and **CENTER FOR** **BIOLOGICAL DIVERSITY,** | Case No. 1:14-cv-737-CL |
| Plaintiffs, | **PLAINTIFFS' SUR-REPLY** **TO DEFENDANTS' MOTION** **TO DISSOLVE INJUNCTION** |
| v. | |
| **U.S. FOREST SERVICE,** and **U.S. FISH AND** **WILDLIFE SERVICE,** | |
| Defendants, | |
| and | |
| **IVERSON MANAGEMENT LIMITED** **PARTNERSHIP,** | |
| Defendant-Intervenor. | |

## INTRODUCTION

Defendants' reply in support of their motion to dissolve the Court's injunction puts forth a narrow interpretation of the injunction order to support their position that simply issuing a new Environmental Impact Statement (EIS) and Record of Decision (ROD) is enough to warrant dissolution of the injunction. Yet this cramped reading of the injunction ignores the underlying purpose of the Court's order—to ensure that future grazing on the Chemult Pasture complies with the Forest Service's duty to maintain viable populations of sensitive species on the forest. The Forest Service's attempt to severely confine the Court's review when deciding this motion is unsupported by the law and the facts. Because the agency has not demonstrated that grazing authorized for 2018 satisfies the injunction, the Court should deny the Government's motion.

## ARGUMENT

The premise of Defendants' argument in their reply is that the Court's injunction applied only to the grazing that was occurring in 2012-2015, and because the Forest Service issued a new ROD that provided for a new grazing scheme, the Court's injunction cannot apply any longer. This position conflicts with the caselaw and is not supported by the factual circumstances here.

### I.       The Court Must Consider the Underlying Reasons for the Injunction.

The cases Defendants cite, as well as others in this Circuit, make clear that courts closely scrutinize whether a significant change in facts or law warrants dissolution of an injunction. *See Sharp v. Weston*, 233 F.3d 1166 (9th Cir. 2000); *Oregon Wild v. Connaughton,* 2012 WL 12888666 (D. Or. Aug. 17, 2012), *aff'd,* 575 Fed. Appx. 736 (9th Cir. 2014); *Conservation Cong. v. U.S. Forest Serv.,* 2018 WL 1142199 (E.D. Cal. March 2, 2018); Pl. Resp. at 2-4 (ECF #138) (citing cases). Importantly, "[a] significant change is one that pertains to the underlying reasons for the injunction." *Conservation Cong,* 2018 WL 1142199, at *2; *Defenders of Wildlife*

*v. U.S. Army Corps of Eng's,* 2017 WL 1405732, at *2 (D. Mont. Apr. 19, 2017); *Flores v. Arizona,* 2013 WL 10207656, at *10 (D. Ariz. March 29, 2013); *see also Oregon Wild,* 575 Fed. Appx. at 736 (affirming that the agency "achieved the injunction's objective").  Thus, this Court must consider whether the Forest Service has fulfilled the underlying reason for the injunction.

Defendants argue that the injunction merely ordered the agency to accurately identify and assess the "status quo" grazing that was occurring in 2012-2015, and the agency fully satisfied that requirement by assessing the prior grazing scheme in the new EIS.  Def. Reply at 3-8 (ECF #141).  But the underlying reason for the injunction was not to accurately assess *past* grazing actions.  The objective was to accurately assess and ensure "future" grazing authorizations would not impair the viability of sensitive species.  R&R at 30-31 (ECF #105).  Defendants' argument would impermissibly allow "any" new decision about future grazing to render the injunction "toothless."  *See Pub. Serv. Co. of Colo. v. Batt*, 67 F.3d 234, 237 (9th Cir. 1995).

It is true that the court demanded the agency do a better job identifying the actual grazing that would occur because of problems with prior trespass and unauthorized grazing, but the reason for that requirement was due to the impacts of the unauthorized grazing on sensitive species.  *Id.*  Hence, the injunction further required the Forest Service to demonstrate that any future annual authorization "does not violate its requirements . . . to maintain the viability of sensitive species populations in range."  *Id.* at 31.  Because the legal violation at issue was the failure to comply with the viability directive, the underlying reason for the injunction was not to simply *assess* prior grazing practices but to *ensure* that future grazing would not impair the viability of the sensitive plant and Oregon spotted frog populations found on the Chemult Pasture.  Accordingly, the court must determine whether the 2018 grazing authorization meets that objective.  *Oregon Wild,* 575 Fed. Appx. at 736; *Flores,* 2013 WL 10207656, at *10 (critical

question was whether the objective of the district court order—satisfaction of the law's standard—had been achieved); *Sharp,* 233 F.3d at 1172-73 (refusing to dissolve injunction where improvements to state program were not sufficient to achieve legal compliance).

## II.    The Forest Service has not Demonstrated that 2018 Grazing Will Comply with the Viability Directive.

The Forest Service next argues that the court cannot prospectively apply the injunction to the new EIS and ROD because they are new agency actions that require a separate legal challenge.  Def. Reply at 10-14.  Plaintiffs are not challenging the EIS and ROD here, but are simply trying to ensure that grazing in 2018 meets the injunction's objective to maintain viable populations of sensitive species.  The agency must show that the grazing is a significant change from past grazing that will achieve this objective, and it must support its assertions with evidence in the record and reasoned explanations.  *Hapner v. Tidwell,* 464 Fed. Appx. 679, 681 (9th Cir. 2012); *All. for the Wild Rockies v. Bradford,* 864 F. Supp. 2d 1011, 1019, 1020, 1023 (D. Mont. 2012); *Or. Wild,* 2012 WL 12888666, at *4-6.  It has not done so in its motion or reply.

First, Defendants claim that the grazing is a new system that expands the grazing base, which is expected to improve livestock distribution, employs a deferred grazing system that allows for periodic rest of areas, and puts private inholdings under Forest Service management.  Def. Reply at 9-10.  Yet, this new system depends on significant infrastructure improvements— i.e. miles of new fencing and many more miles of reconstructed or repaired fence, as well as reconstructed or repaired water developments—which have not been completed or even initiated.  *See* Pl. Resp. at 11-12, 15, 18 (ECF #138) (infrastructure requirements); Third Simpson Decl. ¶¶ 4-13 (ECF #139) (finding lack of any fence or water development work).  In particular, the new grazing system relies on using the North Sheep and Jack Creek pastures, but fences needed for those pastures have not been built.  AMP at 3-5, 20 (ECF #136-4); Third Simpson Decl. ¶ 9.

Defendants combat Ms. Simpson's observations by stating that she was on the allotment three weeks before the grazing season was scheduled to start, but they provide no evidence that any fencing or water development work has or will be completed, and no explanation of the pasture rotation that will occur this summer.  Def. Reply at 16-17.  The only evidence of what is authorized for 2018 is the annual grazing bill for 206 cows and calves to graze the entire allotment from July 1 to September 30.  Def. Ex. 6 (ECF # 136-6).  Thus, the Forest Service has not met its burden of showing that grazing in 2018 will be significantly different from past years. *Sharp,* 233 F.3d at 1173 (appellants did not "bear their burden of proving that circumstances had changed to the degree that" the court could dissolve the injunction).

Second, Defendants claim that the Court cannot consider Plaintiffs' arguments showing the new grazing system will not protect sensitive species because the injunction only directed the Forest Service to address the level and effects of past grazing.  Def. Reply at 13-14.  But again, this ignores the underlying reason for the injunction: to prevent the agency from authorizing future grazing in the Chemult Pasture unless it demonstrates that the grazing will maintain the viability of sensitive species populations.  R&R at 30-31.  The fact that the Forest Service did not issue "annual operating instructions" for 2018 and instead authorized grazing through a grazing bill makes no difference.[1]  The agency still must show that any grazing on the Chemult Pasture would achieve the objective of the injunction.  The Forest Service has not provided the necessary evidence and explanation of the grazing scheme that would actually occur in 2018, or rational support for its conclusions that the grazing would not impair the viability of sensitive species.

Finally, Defendants attempt to counter Plaintiffs' arguments regarding the agency's

---

[1] The Forest Service has not explained why it did not issue an AOI for 2018 when the record indicates in numerous places that the new grazing scheme would be implemented and adjusted each year through annual authorizations.  *See* Pl. Resp. at 9-10.

PLAINTIFFS' SUR-REPLY TO MOTION TO DISSOLVE INJUNCTION                    4

viability conclusions for sensitive plant populations.  Def. Reply at 15-16.  It is true that the agency did not use one species' habitat as a proxy to assess the viability of another species' population under the "proxy-on-proxy" approach.  *See id*. at 15.  However, the Forest Service did use the "habitat-as-proxy" approach, where it assessed a species' habitat to determine the viability of that species because it did not have information about the size of the species' population.  *See All. for the Wild Rockies v. Pena,* 865 F.3d 1211, 1218 (9th Cir. 2017) (explaining "habitat-as-proxy" and "proxy-on-proxy" approaches).  Therefore, it still must know the quality and quantity of habitat necessary to support the species, and its methods for measuring that habitat must be reasonably reliable and accurate.  *Id.*  The Forest Service identified the existing habitat of sensitive plants on the allotment but not the quantity of habitat needed to support viable populations of each.  *See* Botany BE at 45-48, 72-75 (ECF #136-1).

Moreover, the annual monitoring used to assess the quality of sensitive plant habitat used a 20% alteration standard even though the fen habitat that supports these plants is degraded if more than 10% soil disturbance occurs.  EIS at 3-48 (ECF #136-2); Botany BE at 49; AMP at 16.  Contrary to Defendants' assertion, Def. Reply at 16, the condition and monitoring of fens is directly relevant to the injunction because the agency relies on it for maintaining viability of sensitive plant populations.  Botany BE at 45-49; EIS at 3-48.  The agency has not explained how allowing 20% alteration of fens will maintain habitat for sensitive plants when the standard for good condition fens is <10% soil disturbance.

## CONCLUSION

Defendants have not provided the evidence and explanations needed to demonstrate that the grazing authorized for 2018 is a significant change that achieves the objective of the Court's injunction.  Accordingly, the Court must deny Defendants' motion to dissolve the injunction.

Dated: July 16, 2018                  Respectfully submitted,


                                       s/Lauren M. Rule
                                      Lauren M. Rule (OSB #015174)
                                      Elizabeth H. Potter (OSB #105482)

                                      Attorneys for Plaintiffs